[Cite as *State v. Zackery*, 2012-Ohio-3171.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
| Plaintiff-Appellee | |
| -vs- | Case No. 11-CA-133 |
| SIDNEY ZACKERY, SR. | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Licking County Court of
                             Common Pleas, Case No. 11 CR 00229

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      July 12, 2012

APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant


KENNETH W. OSWALT               KIRK A. MCVAY
Licking County Prosecutor       755 S. High Street
20 S. Second Street, Fourth Floor   Columbus, Ohio 43206
Newark, Ohio 43055

*Hoffman, P.J.*

{¶1}   Defendant-appellant Sidney Zackery, Sr. appeals his conviction entered by the Licking County Court of Common Pleas on one count of robbery.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On December 1, 2010, Appellant entered the Duke and Duchess convenience store and gas station at 900 North 21st Street, Newark, Licking County, Ohio.  He selected a candy bar and took it to the register where he handed it to the clerk on duty, Charles Rine.  Rine opened the cash drawer of the store register, Appellant lunged over the counter, and attempted to take the money from the cash drawer.  Rine initially attempted to close the drawer, but Appellant pushed the drawer open.  Appellant persisted in his efforts to open the drawer, and Rine stepped back.  Rine used the store's wall telephone to call 911.

{¶3}   On May 13, 2011, the Licking County Grand Jury indicted Appellant on one count of robbery, in violation of R.C. 2911.02, a felony of the third degree. Appellant waived his right to trial by jury, and consented to be tried to the court. Appellant further stipulated to the elements of the offense, with the exception of the use or threat of force against another.  Appellant was convicted of the charge, and sentenced to a period of community control.

{¶4}   Appellant now appeals, assigning as error:

{¶5}   "I. THE TRIAL COURT ERRED, DEPRIVING DEFENDANT-APPELLANT OF HIS RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO

CONSTITUTION WHEN FOUND DEFENDANT-APPELLANT GUILTY OF ROBBERY WHEN THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE WOULD NOT SUPPORT THE CONVICTION."

{¶6} Appellant's sole assignment of error asserts his conviction is against the manifest weight and sufficiency of the evidence as the evidence presented at trial does not demonstrate he used or threatened force against another.

{¶7} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717, (1983).

{¶8} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), ¶ two of the syllabus.

{¶9} Appellant was convicted of one count of robbery, in violation of R.C. 2911.02, which reads:

{¶10} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶11} "(1) Have a deadly weapon on or about the offender's person or under the offender's control;

{¶12} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;

{¶13} "(3) Use or threaten the immediate use of force against another."

{¶14} "Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. R.C. 2901.01(A)(2). The test for force or threat of force is objective, and force is to be proven by the totality of the circumstances. *State v. Habtemariam* (1995), 103 Ohio App.3d 425. The use or threat of immediate use of force element of the offense of robbery, as expressed in R.C. 2911.02(A), is satisfied if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed. *State v. Davis* (1983), 6 Ohio St.3d 91. The force need not be great in terms of degree; rather, any force will do.

{¶15} The parties stipulated to the facts presented to the trial court in a "Stipulation/Agreement/Waiver", and agreed the sole issue at trial was whether the State proved, beyond a reasonable doubt, the element of the offense of robbery Appellant did "use or threaten the immediate use of force against another." Appellant challenges the trial court's conclusion Appellant utilized force or the threat of force in committing the offense.

{¶16} At trial, Charles Rine, the store attendant involved in the altercation, testified:

**{¶17}** "Q. Let's get some more details. When you say he lunged, give me an idea of what you mean? Did he jump up and over the entire counter, for example?

**{¶18}** "A. No. He basically thrust his upper torso onto the counter by reaching over like from his waist up, reaching over with both arms, and we struggled the drawer me closing it and him pushing it open.

**{¶19}** "Q. Okay. Give me a little more description of struggling with the drawer. In other words - -

**{¶20}** "A. I had my hands - -

**{¶21}** "Q. Are you pushing, are you pulling, are you moving side to side? Just - -

**{¶22}** "A. I'm pushing forward on the register like I'm going to close the drawer, and he's on the other side of the counter and with like one hand he's pushing the drawer open, trying to push it open, and with the other hand, he's like taking the money, and I just keep pushing the drawer shut, and finally, I just gave up.

**{¶23}** "I didn't know if he may have had a weapon or whatever. I was just - - at that point, I was kind of like I'm backing up because I don't know what's going to happen at that point. I am a lot bigger than he is, and I wouldn't take on someone larger than me not knowing what's going to go on.

**{¶24}** "Q. So, the fact that you're bigger than him played into your thinking in that way?

**{¶25}** "A. That, you know, he definitely wants to get the money no matter what. I mean, it's - - he could easily had a weapon on him or something. I wasn't sure. I just - - it was just the fear that I didn't know what was going to happen after that point.

{¶26} "Q. The fact that he went to initially grab the money, why did you attempt to close the drawer at all?

{¶27} "A. Instincts.  I mean it just - - it's there.  It's not that, you know, it's not his property.  It's the store property.  It's, you know, I'm there and that's like my job to make sure that everything is run properly and know that everything is there, and it's totally just, you know - -

{¶28} "Q. Ultimately, did you relent in trying to close the drawer?

{¶29} "A. Yes, I did.

{¶30} "Q. Can you tell me why that was?

{¶31} "A. I just – I figured that, you know, he was so persistent about wanting to get the money.  I was just - - didn't know, you know, what he could be capable of doing - -

{¶32} "Q. Did you - -

{¶33} "A. - - just to get the money out of the drawer.

{¶34} "Q. So you were concerned or had fear that he might - -

{¶35} "A. Yes.  I was concerned about what he may have had on him.  I mean, if he had a weapon, if he was on drugs, something; I didn't want it to escalate any further and possibly me getting injured."

{¶36} Tr. at 16-18.

{¶37} Based upon the above and in consideration of the facts as stipulated to by the parties, we do not find the trial court's finding there was sufficient evidence to satisfy the element Appellant engaged in behavior which constituted an immediate, direct or implied threat to use force against the manifest weight or sufficiency of the evidence.

**{¶38}** Accordingly, Appellant's sole assignment of error is overruled, and the judgment of the Licking County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Farmer, J.  and

Wise, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER


s/ John W. Wise_____
HON. JOHN W. WISE

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| SIDNEY ZACKERY, SR. | : | |
| | : | |
| Defendant-Appellant | : | Case No. 11-CA-133 |

For the reason stated in our accompanying Opinion, the judgment of the Licking County Court of Common Pleas is affirmed.  Costs to Appellant.

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER


s/ John W. Wise_____
HON. JOHN W. WISE